## In re CONHAIM.

(District Court, D. Washington, N. D. November 28, 1899.)

1. BANKRUPTCY—PREFERENCES—PAYMENT OF MONEY.

Payment of a debt in money is a transfer of property, within the purview of Bankr. Act, § 60a, providing that a debtor shall be deemed to have given a preference, if, being insolvent, he has made a transfer of any of his property, and the effect of the enforcement of such transfer will be to enable one of his creditors to obtain a greater percentage of his debt than other creditors of the same class.

2. SAME—PROOF BY PREFERRED CREDITOR—KNOWLEDGE OF CREDITOR.

Under Bankr. Act 1898, § 57g, providing that "the claims of creditors who have received preferences shall not be allowed unless such creditors shall surrender their preferences," it is immaterial that the creditor did not know, or have cause to believe, that the debtor was insolvent or that he was receiving a preference, if such was actually the fact. This provision

is not limited or modified by the distinct provision of section 60b, that preferences shall be voidable by the trustee if the creditor "had reasonable cause to believe that it was intended to give a preference."

**8 SAME—SURRENDER OF PREFERENCE.**

Where a creditor, holding four promissory notes of his insolvent debtor, received several payments on account, all within four months before the debtor was adjudged bankrupt, and so applied the payments as to extinguish two of the notes, partly satisfy the third, and leave the fourth wholly unpaid, *held*, that he could not prove the fourth note in the character of an unpreferred creditor, but must surrender all the payments received, as a condition upon being allowed to prove any claim against the estate.

In Bankruptcy. On question certified by referee in bankruptcy.

Brady & Gay, for trustee in bankruptcy.

Piles, Donworth & Howe, for proving creditor.

HANFORD, District Judge. This is a case of voluntary bankruptcy, in which the referee has certified to the court for decision a question as to the right of the Washington National Bank to prove against the bankrupt estate, and have allowed, debts due to the bank upon two promissory notes, one of which has been partially paid. The trustee contends that the claim of the bank as to both of said promissory notes should be rejected, unless the bank will surrender the amounts of the several payments made by the bankrupt on account of his indebtedness to said bank. The facts of the case are as follows: On January 1, 1899, the bank held four promissory notes given by the bankrupt for loans made to him by the bank. Between January 1 and February 20, 1899, the bankrupt made several payments to the bank on account of his indebtedness on said notes, amounting in the aggregate to $3,150; the last payment being on the 14th day of February. The petition to be adjudged a bankrupt was filed in this court on the 20th day of February, 1899. The payments when made were not applied on all of the four promissory notes, but were so applied as to extinguish two of them, and the surplus was all applied on one of the notes now held by the bank, leaving a small balance unpaid; and the fourth note, amounting to $1,500, with accrued interest, remains wholly unpaid. At the time the payments were made the bankrupt was in fact insolvent, but there is no evidence tending to prove that the officers of the bank had any reason to suppose that he was in that condition, or that they were receiving a preference over other creditors.

Section 57g of the bankruptcy act provides that "the claims of creditors who have received preferences shall not be allowed, unless such creditors shall surrender their preferences." The attempt is made to avoid the objection to allowance of this claim by insisting that the bank has not received a preference, and in the argument there is an attempt to draw a distinction between preferences given and preferences received; that is to say, when an insolvent debtor disposes of his property so as to benefit one creditor, and knows that his other creditors must suffer a loss, the benefit so given is, as to the debtor, a preference, but, if the creditor who receives it does not happen to know that he is gaining an advantage over other creditors of the same debtor, then, as to him, there is no preference. This ap-

pears to me to be, in truth, a hairsplitting argument. It seems to me that, when a preference is given, there is necessarily a preference received. The word "preference," as used in the bankruptcy act, must be given its usual and ordinary definition; and it means exactly the same thing, whether connected with the word "given," or with the word "received." This section of the act was not intended to impose a penalty, but merely to give creditors who received preferences options to keep what they have received, and take no dividends from the estate, or to surrender their preferences, and share equally with other creditors in the general distribution. It is the benefit or advantage which one creditor obtains over others, and not the purpose or intent of the parties, which determines the effect. Section 60b provides that in cases of preferences received within four months before the filing of a petition, or after the filing, with reasonable cause to believe that it was intended thereby to give a preference, such payment or transfer of property shall be voidable by the trustee, and he may recover the property or its value. This is a distinct provision of the law, and, in my opinion, it does not control the interpretation of section 57g. The law which does govern is found in section 60a, which provides that a preference shall be deemed to have been given when an insolvent person shall have made a transfer of his property, and the effect of such transfer will be to enable any one of his creditors to obtain a greater percentage of his debts than any other of such creditors of the same class. Referring to the first section of the act, we find that a definition is given to the word "transfer," giving it a comprehensive meaning, including a payment. So it is made clear by the express terms of the statute that in making payments to the Washington National Bank after the petitioner had become insolvent, and leaving other creditors unpaid, the case was brought within the purview of section 57g; and the bank is therefore required to elect whether to account to the trustee for the $3,150 received in payment, and stand upon a plane of equality with other unsecured creditors, or to retain said amount in lieu of any dividends which it would otherwise be entitled to receive from the estate.

The argument that the bank may assume the position of an unpreferred creditor as to the $1,500 promissory note, and retain the payments which were applied on the other notes, is, in my opinion, contrary to the spirit and letter of the statute. The prohibition contained in section 57g is not limited by the terms of the section to the particular debt or chose in action on account of which a preference has been received, but it refers to creditors who have received preferences, and provides that the claim of such creditors shall not be allowed, unless they shall surrender the preferences received. In the very excellent treatise by Mr. Frank O. Loveland, the following commentary is made upon this section of the statute:

"The language of this provision is much broader than that contained in the former bankrupt acts. Under the act of 1867 such creditors were prohibited from proving only 'the debt or claim on account of which the preference' was made. Under that provision the court held that where a creditor had two disconnected debts, and had received a fraudulent preference as to one only, he might prove the other, and receive dividends upon it. It may be doubted,

however, under the present statute, if a creditor who has received a preference can prove any claim until he has surrendered his preference." Loveland, Bankr. p. 257.

Let an order be entered disallowing the entire claim of the Washington National Bank as to both of the promissory notes mentioned, unless said bank shall elect to surrender to the trustee the entire amount of payments which it has received, and present a new claim for the amount which the bankrupt owed on the 1st day of January, 1899.